662 P.2d 1048

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a Delaware corporation, Third Party Plaintiff-Appellee,

v.

WILLIAMS ENERGY COMPANY, a Delaware corporation, Third Party Defendant-Appellant.

No. 1 CA–CIV 5520.

Court of Appeals of Arizona, Division 1, Department D.

Jan. 20, 1983.

Rehearing Denied March 8, 1983.

Review Denied April 19, 1983.

Fennemore, Craig, von Ammon, Udall & Powers by Linwood Perkins, Jr. and C. Owen Paepke, Phoenix, for third party plaintiff-appellee.

Robbins & Green, P.A. by Philip A. Robbins, Phoenix, for third party defendant-appellant.

OPINION

HAIRE, Presiding Judge.

On this appeal the appellant, Williams Energy Company (Williams), contends that

the trial court erred in requiring Williams to indemnify the appellee, The Atchison, Topeka and Santa Fe Railway Company (Santa Fe), for one-half of the damage and expense incurred by Santa Fe relating to litigation arising out of an explosion of a railway tank car in Kingman, Arizona. Santa Fe's claim for indemnification was based upon an indemnification clause contained in a lease between Santa Fe and Williams,[1] wherein Santa Fe leased to Williams certain land upon which a railroad tank car unloading facility was subsequently constructed. The underlying litigation was complex, and only those facts and procedural details necessary for a resolution of the indemnification issue will be set forth in this opinion.

On the day of the catastrophe which resulted in the underlying litigation, two of Williams' employees were unloading a railroad tank car containing liquified petroleum gas. The tank car had been transported by Santa Fe, as a common carrier, from El Segundo, California, to the unloading facilities on the premises leased to Williams. During the unloading activities a fire occurred. The two Williams employees, Formentini and Mast, received severe burns as a result of the fire—Formentini survived; Mast died.

After exposure to the fire for approximately twenty minutes, the tank car ruptured and the released liquified petroleum gas vapor ignited, creating a huge fireball as a part of an explosion. This event caused injuries or death to many persons who were in the vicinity of the tank car.

The resulting litigation involved claims asserted by numerous plaintiffs against Williams, Santa Fe, and three other defendants, whose identities are not pertinent to this appeal. The plaintiffs' claims in the litigation against Williams sounded in negligence, based upon the alleged negligent construction and maintenance by Williams of its equipment and facilities, and the alleged negligent conduct of its two employees in unloading the liquified petroleum gas.[2]

The claims against Santa Fe pertinent to this appeal sounded in strict liability. Summarized, the claims of the various plaintiffs against Santa Fe were based upon the theory that the tank car would not have ruptured, or would not have ruptured as soon as it did, except for the fact that the tank car was defectively designed because the shell was not properly insulated. The theory of strict liability against Santa Fe was based upon Santa Fe's alleged participation in the development, design, manufacture and introduction into the stream of commerce of the allegedly defective tank car. The strict liability plaintiffs did not contend that Santa Fe was legally liable in any vicarious or derivative sense for the conduct of Williams or its employees.

All of the actions for injuries or deaths pertinent to the issue presented in this appeal were settled prior to trial for a total of approximately $14,000,000. Each of the various defendants contributed to that settlement, with Williams contributing approximately $5,481,250 and Santa Fe contributing $1,250,000. Following the settlement or dismissal of the claims of the various plaintiffs, both Santa Fe and Williams moved for summary judgment on Santa Fe's indemnity claim against Williams. The trial court ultimately granted Santa Fe's motion, awarding Santa Fe judgment against Williams for $985,517.09. This amount represented one-half of the $1,250,000 contributed by Santa Fe to the settlement, together with one-half of the cost

1. The original lessee was Suburban Gas of Kingman, but Williams later assumed all of Suburban's obligations under the lease.

2. The two Williams employees, Formentini and Mast, were covered by workmen's compensation insurance. Therefore, they were not plaintiffs in the litigation against Williams, and the payments made to these two employees on behalf of Williams are not included in any discussion contained in this opinion of damages incurred by Williams.

incurred by Santa Fe in defending the strict liability claims.[3]

Against this background we now consider the merits of Williams' contention that the trial court erred in finding Williams liable to Santa Fe under the indemnity clause found in paragraph 9 of the lease, which provided as follows:

"9. *Lessee agrees to indemnify and save harmless Lessor against all loss, damage or expense which Lessor may sustain,* incur or become liable for, including loss of or damage to property or injury to or death of persons and fines or penalties imposed upon or assessed against Lessor, *arising in any manner out of* (a) the use of the Premises or Improvements by Lessee, (b) any breach by Lessee of the terms, covenants or conditions in this instrument contained, or (c) *the* sole or *contributing acts* or omissions of Lessee or the employes, agents, patrons or invitees of Lessee in, on or about the Premises or Improvements, *except that if Lessor shall participate in any such contributing acts or omissions, then the loss, damage or expense arising therefrom shall be borne by the parties hereto equally.*"

(Emphasis added).

As to the damages and expenses remaining at issue on this appeal, Santa Fe acknowledges that the only possible basis for its indemnity claim rests upon the "contributing acts" portion of clause (c) of paragraph 9 of the lease. Santa Fe's theory, reduced to its simplest terms, is that both the acts of Williams in connection with the outbreak of the fire and the acts of Santa Fe in connection with the design and distribution of the tank car contributed to the Kingman accident. Therefore, Santa Fe's argument continues, the indemnity provision of clause (c) of paragraph 9 applies, entitling Santa Fe to partial indemnity in the amount awarded by the trial court. In assessing this theory of liability for indemnity and the amount awarded, we note that neither party contends that the amounts paid by Williams and Santa Fe in settlement of the claims did not qualify as damage or expense arising from the contributing acts of both parties, nor do they contend that the settlements were made otherwise than in good faith.

In response, Williams urges that even if it is assumed that the partial indemnity provisions of clause (c) of paragraph 9 are valid and could apply to a fact situation of the nature presented here, nevertheless Santa Fe would not be entitled to any indemnification because Santa Fe has failed to show that it has paid more than an equal share of the damage and expense arising from the contributing acts of the parties. We agree and therefore reverse the judgment entered in the trial court.

In our opinion the provisions of clause (c) of paragraph 9 are clear and unambiguous. When a contract provision is unambiguous, construction of the contract is a question for the court to determine. *Shattuck v. Precision-Toyota, Inc.,* 115 Ariz. 586, 588, 566 P.2d 1332, 1334 (1977). Furthermore, since the interpretation of the provision in question is a matter of law, we are not bound by the interpretation given to the provision by the trial court. *See Gutmacher v. H & J Construction Co.,* 101 Ariz. 346, 347, 419 P.2d 525, 526 (1966). Clause (c) clearly requires, as a condition to Santa Fe's right to indemnification, that Santa Fe first show that the loss, damage or expense arising from the contributing acts of the parties has been borne by Santa Fe unequally, that is, that it has paid more than an equal share of such loss, damage or

3. Also included was $12,647.44 constituting *all* of Santa Fe's cost incurred in defending and settling claims against Santa Fe based upon the alleged vicarious liability for the negligence of Williams. The issue of Santa Fe's right to full indemnity for the *vicarious* liability claims has been settled and is no longer involved in this appeal. Santa Fe and Williams have also agreed upon Santa Fe's indemnity rights in the future concerning the defense of the one remaining unresolved claim, that of Williams' employee, Formentini.

expense. The "exception" language of clause (c) of paragraph 9 mandates this conclusion:

"... except that if Lessor shall participate in any such contributing acts or omissions, then the loss, damage or expense arising therefrom shall be borne by the parties hereto equally."

The "loss, damage or expense" language in the exception clause is modified by the words "arising therefrom." These words in turn clearly refer back to the "contributing acts" of the parties. Thus, it is the loss, damage or expense arising from the contributing acts of Santa Fe and Williams which is to "be borne by the parties hereto [lessor and lessee] equally." Here, the uncontroverted facts show that Williams has borne a substantially greater share than Santa Fe of the damage and expense flowing from the admittedly contributing acts of Williams and Santa Fe. Under such facts, Santa Fe has not shown itself entitled to indemnification.

Santa Fe urges that the exception language of clause (c) of paragraph 9 does not expressly state *whose* "loss, damage or expense" is to be borne by the parties equally. From this premise Santa Fe then urges, on the basis of parallel construction, that the "loss, damage or expense" referred to in the exception clause must be the same "loss, damage or expense" referred to in the initial language of paragraph 9 and therefore be limited to the loss, damage or expense which Santa Fe alone, as the lessor, has sustained. We find this argument unpersuasive. First, the words "arising therefrom" in the exception clause clearly identify the loss, damage or expense involved as being that which arises from the contributing acts of both the lessor and lessee. Where the loss, damage or expense is the result of contributing acts of both Santa Fe and Williams, clause (c), unlike the initial language of paragraph 9, does not require Williams to indemnify Santa Fe for "all loss, damage or expense which [Santa Fe] may sustain." Rather, under any reasonable reading of the exception clause the requirement for payment in indemnification of Santa Fe is limited and does not arise until Santa Fe shows that it has borne a greater than equal share of the loss, damage or expense arising from the contributing acts of the parties. Once this threshold showing is made, then, under the initial language of paragraph 9, Santa Fe is entitled to indemnification by Williams for such portion of the loss, damage or expense previously borne by Santa Fe necessary to equalize the parties' respective losses under the "borne equally" provisions of clause (c).

In the trial court, Santa Fe did not show that it had met this threshold requirement, that is, that it had paid a greater share than Williams of the loss, damage or expense arising from the contributing acts of the parties. In fact, the record before the trial court clearly demonstrated the contrary. We therefore reverse the judgment entered by the trial court and remand with directions to grant Williams' motion for summary judgment on the indemnification claim. This reversal does not apply to the indemnification granted to Santa Fe relating to the Formentini and Mast claims. That indemnification claim, as previously indicated in this opinion, involved a different portion of paragraph 9's indemnification provisions and has been settled by the parties.

In view of the foregoing, we find it unnecessary to consider various other issues raised by Williams which contest the validity and enforceability of the lease's indemnification provisions when applied to the facts of this case.

EUBANK and MEYERSON, JJ., concur.